UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| DEBRA KAY KEMP, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:16-cv-00031-NCC |
| | ) |
| NANCY A. BERRYHILL,[1] | ) |
| Acting Commissioner of Social Security | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Debra Kay Kemp ("Plaintiff") for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* Plaintiff has filed a brief in support of the Complaint (Doc. 20), Defendant has filed a brief in support of the Answer (Doc. 26), and Plaintiff has filed a Reply (Doc. 29). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 10).

## I. PROCEDURAL HISTORY

Plaintiff filed her application for SSI on September 14, 2012 (Tr. 186-94). Plaintiff was initially denied on February 15, 2013, and she filed a Request for Hearing before an Administrative Law Judge ("ALJ") on March 27, 2013 (Tr. 104-10, 113). After a hearing, by decision dated December 18, 2014, the ALJ found Plaintiff not disabled (Tr. 15-33). On March

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

16, 2016, the Appeals Council denied Plaintiff's request for review (Tr. 1-6). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined that Plaintiff has not engaged in substantial gainful activity since September 14, 2012, the filing date of her application for SSI (Tr. 20). The ALJ found Plaintiff has the severe impairments of diabetes mellitus with diabetic retinopathy[2] and degenerative disc disease of the lumbar spine,[3] but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 20-22).

After considering the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to lift and carry up to 30 pounds occasionally and 20 pounds frequently with the following limitations (Tr. 22). She is not limited in her ability to sit, can stand and walk for six hours in an eight-hour workday, can frequently balance, and can occasionally bend, stoop, kneel, crouch, crawl, and climb ramps and stairs (*Id.*). She needs to avoid climbing ladders, ropes, and scaffolds, and needs to avoid driving and jobs that require vision for small or fine details (*Id.*). She also needs to avoid exposure to extreme temperatures, wetness, high humidity, dust, gases, fumes, odors, and poor ventilation beyond a normal office or retail setting (*Id.*). Further, she needs to avoid unprotected heights and hazardous moving

---

[2] The U.S. National Library of Medicine defines diabetes mellitus as a "disease in which the body does not control the amount of glucose in the blood," and diabetic retinopathy as "[d]amage to the blood vessels in the retina due to diabetes." U.S. National Library of Medicine, *Diabetes Mellitus (Diabetes) Definition*, https://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0024704 (last visited June 30, 2017); U.S. National Library of Medicine, *Diabetic Retinopathy Definition*, https://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0027944 (last visited June 30, 2017).

[3] Johns Hopkins Medicine defines degenerative disc disease as the deterioration of "the cartilage in the spine joints." Johns Hopkins Medicine, *Degenerative Disc Disease*, http://www.hopkinsmedicine.org/healthlibrary/conditions/adult/orthopaedic_disorders/orthopedic_surgery_22,degenerativediscdisease/ (last visited June 30, 2017).

2

machinery (*Id.*). The ALJ found Plaintiff has no past relevant work (Tr. 26). The ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including collator operator, folding machine operator, inserting machine operator, electrical assembler, and bench assembler (Tr. 27). Thus, the ALJ concluded that a finding of "not disabled" was appropriate (Tr. 28). Plaintiff appeals, arguing a lack of substantial evidence to support the Commissioner's decision.

### III. RELEVANT RECORDS

Plaintiff previously applied for SSI on October 14, 2005. After a hearing, by decision dated May 14, 2008, the ALJ found Plaintiff not disabled (Tr. 74-85). The ALJ found that Plaintiff had the severe impairments of reactive airway disease and morbid obesity, and had the RFC to perform light work as defined in 20 C.F.R. § 416.967 (Tr. 80). The ALJ noted that "[x]-rays have recently shown [Plaintiff] had [sic] degenerative joint disease and degenerative disc disease of the lumbar spine," and that pulmonary function studies showed a reduced $FEV_1$[4] (Tr. 79). On February 27, 2009, the Appeals Council denied Plaintiff's request for review (Tr. 86-88). Plaintiff reapplied for SSI on September 27, 2012. In her 2012 application, Plaintiff claims four different bases for her disability: diabetes, asthma, glaucoma, and back, hip, and feet problems (Tr. 207).

Turning to the medical record for the 2012 SSI application, Plaintiff visited her treating physician, Justin LaMonda, M.D., on December 11, 2012. Dr. LaMonda diagnosed Plaintiff with, among other things, morbid obesity, asthma, chronic lower back pain, inflammation of the

---

[4] Johns Hopkins School of Medicine defines $FEV_1$ as "the volume that the subject can expire in one second." A reduced $FEV_1$ can indicate "asthma, bronchitis or emphysema." Johns Hopkins Medicine, *Forced Expiration*, http://oac.med.jhmi.edu/res_phys/Encyclopedia/ForcedExpiration/ForcedExpiration.HTML (last visited July 10, 2017).

3

sacroiliac joint[5] and hips, and "[s]evere disabling weakness requiring [a] power wheelchair to get around" (Tr. 333). Dr. LaMonda noted that Plaintiff was "on the very verge of disability due to her unwillingness to get up" from her wheelchair (*Id.*). Further, Dr. LaMonda noted that Plaintiff had a "fully reversible cause of weakness and ha[d] no valid reason for continuing to let herself become permanently disabled by staying in the power chair all day" (*Id.*). Dr. LaMonda offered injection therapy to relieve Plaintiff's joint pain, but she refused treatment (*Id.*). Dr. LaMonda recommended physical therapy, and told Plaintiff that exercising was a matter of "life or death" (Tr. 333, 358).

In follow-up appointments, Dr. LaMonda noted that Plaintiff had made no attempt to get out of her wheelchair, and that she would become wheelchair-bound if she does not (Tr. 358, 447, 449, 451, 456, 458). In September of 2013, Plaintiff was forced to do physical therapy in order to requalify for a power wheelchair (Tr. 445). Plaintiff reported she was in a lot of pain, but thought she was getting stronger because of the physical therapy (*Id.*). In November of 2013, Dr. LaMonda noted that while physical therapy put "stress and exercise on [Plaintiff's] heart, . . . [she] tolerated [it] very well" (Tr. 443). The treatment notes from December 2013 to February 2014 do not indicate that Plaintiff tried to exercise again (Tr. 411, 439, 441). In March of 2014, Dr. LaMonda maintained his opinion that Plaintiff has a "[s]evere disabling weakness requiring [a] power wheel chair to get around," and noted that Plaintiff was "bound to [a] power-chair" (Tr. 437).

In a letter dated August 21, 2014, Dr. LaMonda wrote that Plaintiff is "unable to ambulate," "unable to propel a manual wheelchair," and "requires a power wheel chair for

---

[5] The U.S. National Library of Medicine defines the sacroiliac joint as "the place where the sacrum and the iliac bones join" with the main purpose of "connect[ing] the spine and the pelvis." U.S. National Library of Medicine, *Sacroiliac joint pain*, https://medlineplus.gov/ency /patientinstructions/000610.htm (last updated Nov. 27, 2016).

4

independent mobility" (Tr. 462). Further, Dr. LaMonda opined that Plaintiff "presents with weakness of all extremities" and has "limited purposeful movement of bilateral lower extremities" (*Id.*). Dr. LaMonda stated that "[t]he power chair is medically necessary for [Plaintiff]" (*Id.*).

## IV. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

5

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Cox*, 495 F.3d at 617. Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

## V. DISCUSSION

In her appeal of the Commissioner's decision, Plaintiff raises three issues. First, Plaintiff argues the ALJ failed to properly evaluate Plaintiff's credibility (Doc. 20 at 4-5). Second,

Plaintiff asserts that the ALJ failed to properly weigh the medical opinion evidence in reaching his RFC determination (*Id.* at 5-6). Third, Plaintiff argues the ALJ failed to consider the combination of Plaintiff's non-severe impairments in reaching his RFC determination (*Id.* at 7-8).[6] Because the ALJ erred in weighing the medical opinion evidence in reaching his RFC determination, the Court will only address that issue.

Plaintiff argues that the ALJ improperly weighed the medical opinion of Dr. LaMonda in reaching his RFC determination (*Id.* at 6). Specifically, Plaintiff argues that her power wheelchair is medically necessary pursuant to the opinion of Dr. LaMonda, her treating physician (*Id.*).[7] The ALJ determined Plaintiff has the RFC to lift and carry up to 30 pounds occasionally and 20 pounds frequently with several limitations (Tr. 22).[8] In reaching his RFC determination, the ALJ weighed the medical opinion evidence of three physicians: Dr. LaMonda, Ann Winkler, M.D., and Dennis Velez, M.D. Dr. Winkler is a rheumatologist and independent medical expert who reviewed Plaintiff's file and testified at Plaintiff's hearing (Tr. 50-63, 173-79). Dr. Velez is a consultative examiner who examined Plaintiff on November 4, 2014 (Tr. 463-83). The ALJ disagreed with Dr. LaMonda and agreed with Dr. Winkler and Dr. Velez, finding that the power wheelchair was not medically necessary for Plaintiff.

RFC is "the most a claimant can do despite his limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). "RFC is an administrative

---

[6] Plaintiff argues that Social Security Ruling 82-59 ("SSR 82-59") applies (Doc. 20 at 4-7). As the Commissioner notes, the Ruling only applies when the ALJ finds the plaintiff disabled (Doc. 26 at 9-10). Because the ALJ did not find Plaintiff disabled here, SSR 82-59 does not apply. *See Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir. 2001).

[7] The parties do not dispute that Dr. LaMonda is Plaintiff's treating physician (Doc. 20 at 7; Doc. 26 at 7).

[8] This RFC does not fit into a "physical exertion requirements" category under 20 C.F.R. § 404.1567. The RFC determination is above the requirements of "light work," but below the requirements of "medium work."

assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." Social Security Ruling 96–8p, 1996 WL 374184 at *2. "[A] claimant's RFC [is] based on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *Moore*, 572 F.3d at 523 (quotation and citation omitted). Accordingly, it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC. *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016).

"A treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." *Reece v. Colvin*, 834 F.3d 904, 908-09 (8th Cir. 2016) (internal quotations omitted). "Although a treating physician's opinion is usually entitled to great weight, it 'do[es] not automatically control, since the record must be evaluated as a whole.'" *Id.* at 909 (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "Whether the ALJ gives the opinion of a treating physician great or little weight, the ALJ must give good reasons for doing so." *Id.* "The opinion of a consulting physician who examines a claimant once or not at all does not generally constitute substantial evidence." *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998) (citing *Metz v. Shalala*, 49 F.3d 374, 378 (8th Cir. 1995)). This is especially true when the consulting physician's opinion is "contradicted by the evaluation of the claimant's treating physician." *Hancock v. Sec'y of Dep't of Health, Educ. & Welfare*, 603 F.2d 739, 740 (8th Cir. 1979).

Dr. LaMonda, Plaintiff's treating physician, diagnosed Plaintiff with "[s]evere disabling weakness requiring [a] power wheelchair to get around" (Tr. 333). Dr. LaMonda maintained this

9

diagnosis for over two years (Tr. 333, 358, 437, 441, 445, 451, 458). In December of 2012, Dr. LaMonda noted that Plaintiff "need[ed] to get into physical therapy or she will probably be completely unable to stand up soon" (Tr. 332). Plaintiff entered physical therapy for two months in 2013 and, once she qualified for a new power wheelchair, she stopped attending (Tr. 443-45). When Dr. LaMonda gave his opinion in August of 2014, he stated that "[t]he power chair is medically necessary for [Plaintiff]" (Tr. 462).

The ALJ assigned "great weight" to Dr. LaMonda's 2012 treatment note that Plaintiff's weakness was fully reversible (Tr. 25). The ALJ disagreed, however, with Dr. LaMonda's 2014 opinion that the wheelchair was medically necessary for Plaintiff (*Id.*). The ALJ noted that Plaintiff's "refusal to follow Dr. LaMonda's recommendations is noncompliance," and that "[Plaintiff's muscle] deconditioning is the reason she may require a wheelchair at times for mobility" (Tr. 24, 25 n.3). The ALJ gave greater weight to Dr. Winkler's opinion that Plaintiff does not need a wheelchair as a result of a medically determinable impairment, and Dr. Velez's opinion that Plaintiff's lower extremity strength was 5/5 (Tr. 25).

Dr. Winkler testified at Plaintiff's hearing on August 13, 2014. Dr. Winkler opined that Plaintiff "should be able to lift or carry 30 pounds occasionally and 20 pounds frequently, stand and walk at least six hours of an eight-hour day with no limits in terms of sitting" (Tr. 55). But Dr. Winkler qualified her opinion by stating that she was looking at "not a complete record" (Tr. 54). Indeed, Dr. Winkler told the ALJ she needed: an MRI of Plaintiff's spine to determine whether the wheelchair is medically necessary (Tr. 53), a neurological exam and a bone scan to determine whether the wheelchair is medically necessary (Tr. 60, 63), a pulmonary function test to confirm Plaintiff's alleged asthma (Tr. 53), a physical exam to confirm fibromyalgia (*id.*), and exams to determine Plaintiff's gait and ability to walk (Tr. 54).

In determining whether the power wheelchair was medically necessary for Plaintiff, the ALJ disagreed with Dr. LaMonda and assigned "great weight" to Dr. Winkler (Tr. 23-24). The ALJ must give "good reasons" for assigning Dr. LaMonda's opinion no weight. *Reece*, 834 F.3d at 909. Relying on Dr. Winkler's opinion is not a good reason because, by Dr. Winkler's own statements, she was relying on an incomplete record. "[T]he ALJ has a duty to fully develop the record." *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005). The ALJ does not "have to seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped." *Stormo*, 377 F.3d at 806. Dr. Winkler stated that the medical records relating to Plaintiff's need for a wheelchair were undeveloped. If the ALJ wanted to rely on Dr. Winkler's testimony, the ALJ had a duty to re-contact Dr. LaMonda for clarification of his opinion and was "required to order medical examinations and tests . . . [because] the medical records . . . [did] not give sufficient medical evidence to determine whether the claimant [was] disabled." *Ellis*, 392 F.3d at 994; *White v. Colvin*, 129 F. Supp. 3d 813, 829 (E.D. Mo. 2015). Relying on a non-examining physician who expresses that the medical record is undeveloped is not a "good reason" for assigning no weight to the treating physician. *Reece*, 834 F.3d at 909. Therefore, to assign no weight to Dr. LaMonda's opinion, the ALJ must provide a good reason elsewhere in the opinion.

Also in determining whether the power wheelchair was medically necessary for Plaintiff, the ALJ assigned "great weight" to the opinion of Dr. Velez (Tr. 24-25). Dr. Velez examined Plaintiff once, and his opinion is contrary to Plaintiff's treating physician, Dr. LaMonda. While Dr. Velez indicated that Plaintiff had 5/5 lower extremity strength, he noted that Plaintiff "was very hesitant to ambulate" and that a "reliable assessment of weightbearing, squatting, and gait was not possible" (Tr. 479, 481). Dr. Velez also noted that Plaintiff could "walk to the exam table" but, while walking, needed to "hold onto the exam table for support" (Tr. 477). This

11

apparent inconsistency does not provide substantial evidence that Plaintiff can walk. Even if Dr. Velez's notes are evidence that Plaintiff can walk some distance, they do not support the RFC determination that Plaintiff can walk six hours of an eight-hour workday. Moreover, the ALJ noted that Dr. Velez was "unable to fully assess [Plaintiff's] functional capacity" due to her behavior at the consultative examination (Tr. 24).[9] Thus, Dr. Velez's opinion does not constitute "substantial evidence" because he examined Plaintiff once, he was unable to assess her, his report is internally inconsistent, and his opinion is contrary to Plaintiff's treating physician. *Kelley*, 133 F.3d at 589; *Hancock*, 603 F.2d at 740; *Cantrell v. Apfel*, 231 F.3d 1104, 1107 (8th Cir. 2000) ("[T]he report of a consulting physician who examined a claimant once does not constitute 'substantial evidence' upon the record as a whole, especially when contradicted by the evaluation of the claimant's treating physician.") (quoting *Lanning v. Heckler*, 777 F.2d 1316, 1318 (8th Cir. 1985)).

Finally, in determining whether the power wheelchair was medically necessary for Plaintiff, the ALJ considered the objective medical evidence. The ALJ noted that an "[x]-ray of the lumbar spine documents degenerative changes," but there is "no evidence" the wheelchair was prescribed by a physician (Tr. 23). While the past use of a wheelchair without a prescription may be relevant to Plaintiff's credibility, it is not relevant when determining whether the wheelchair is medically necessary for Plaintiff now. The objective medical evidence in the record, as it relates to Plaintiff's need for a wheelchair, is limited to two sets of x-rays – both of which show a degenerative change in Plaintiff's spine (Tr. 79, 379-82). Therefore, Dr. LaMonda's opinion is not inconsistent with the objective medical evidence. *See Reece*, 834 F.3d at 909.

---

[9] Dr. Velez noted that Plaintiff provided inconsistent answers, was noncompliant with some tests, and completed other tests with great hesitation (Tr. 476-80).

Lastly, Dr. LaMonda's 2014 opinion that Plaintiff needs a wheelchair is not necessarily inconsistent with his 2012 opinion that Plaintiff had a fully reversible cause of weakness. Indeed, Dr. LaMonda opined in 2012 that Plaintiff would become wheelchair-bound if she did not exercise (Tr. 333). A plaintiff's deconditioning must be connected to her RFC. *Bladlow v. Apfel*, 205 F.3d 356, 361 (8th Cir. 2000) ("On remand, the ALJ should seek to focus the blurry connection between [the plaintiff's] general deconditioning and his work limitations."); *see Wiley v. Apfel*, 171 F.3d 1190, 1191-92 (8th Cir. 1999) (remanding with directions that the ALJ ask a testifying doctor to clarify his testimony regarding the continuity of claimant's disability).

In sum, the ALJ did not provide "good reasons" for assigning the 2014 opinion of Dr. LaMonda no weight in determining Plaintiff's RFC. *Reece*, 834 F.3d at 909. Thus, remand is required. *See Anderson v. Barnhart*, 312 F. Supp. 2d 1187, 1194 (E.D. Mo. 2004) ("Failure to provide good reasons for discrediting a treating physician's opinion is a ground for remand"); *Clover v. Astrue*, No. 4:07CV574–DJS, 2008 WL 3890497, at *12 (E.D. Mo. Aug. 19, 2008) ("Confronted with a decision that fails to provide 'good reasons' for the weight assigned to a treating physician's opinion, the district court must remand."); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give to your treating source's opinion.").

While the Court need not decide whether the record is undeveloped, the Court highlights Dr. Winkler's concerns about the lack of objective medical tests relating to Plaintiff's need for a wheelchair (Tr. 53-60). The Court also notes that while the ALJ found "the available evidence fails to demonstrate [Plaintiff's asthma]," the ALJ from the 2008 hearing found Plaintiff to have the severe impairment of reactive airway disease based on pulmonary function studies showing a reduced $FEV_1$ (Tr. 21, 79).

## VI. CONCLUSION

For the foregoing reasons, the Court finds the ALJ's decision was not based on substantial evidence in the record as a whole. Though the Court does not make an ultimate determination regarding Plaintiff's disability, the Court finds this case should be reversed and remanded. On remand, the ALJ is directed to properly evaluate and weigh the medical opinion evidence; formulate a new residual functional capacity for Plaintiff based on the medical evidence in the record; further develop the medical record if necessary; and then continue with the next steps of the sequential evaluation process.

**IT IS HEREBY ORDERED** that this action is **REVERSED AND REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration in accordance with this Memorandum and Order.

A separate Judgment will accompany this Order.

Dated this 22nd day of August, 2017.

       /s/ Noelle C. Collins
    NOELLE C. COLLINS
    UNITED STATES MAGISTRATE JUDGE